FIRST INTERSTATE BANK OF
DENVER, N.A., Plaintiff–
Appellee,

v.

COLCOTT PARTNERS IV and David
L. Hofer, Defendants–Appellants.

No. 91CA0489.

Colorado Court of Appeals,
Div. III.

June 4, 1992.

John R. Mallory, Dennis E. Baker, Denver, for plaintiff-appellee (on the briefs).

Hughes & Dorsey, Susan L. Linsley, Denver, for plaintiff-appellee.

Sparks Dix Enoch, P.C., Barton L. Enoch, Randall N. Sickler, Colorado Springs, for defendants-appellants.

Opinion by Judge REED.

Defendants, Colcott Partners IV (Colcott) and David L. Hofer, appeal the order entered in favor of plaintiff, First Interstate Bank of Denver, N.A., denying their motion to set aside a settlement stipulation. We affirm.

On July 29, 1986, Colcott executed a promissory note payable to plaintiff in the amount of $330,000. The note was secured by a deed of trust executed on the same day encumbering real property owned by Colcott.

The note was essentially non-recourse, limiting plaintiff's remedy against the

note's maker, in the event of default, to foreclosure and barring any enforcement of a deficiency against it. The note provided as follows:

Notwithstanding any provision herein to the contrary, Holder covenants and agrees with Maker that in the event Holder shall, at any time, take action to enforce the collection of the indebtedness evidenced by this Note and secured by the Deed of Trust, it shall proceed first to foreclose the Deed of Trust ... instead of instituting suit upon this Note, and if, as a result of such foreclosure on the sale of property covered by the Deed of Trust, any lesser sum is realized therefrom than the amount then due and owing under this Note, Holder will not institute any action, suit, claim or demand in law or equity against Maker for or on account of such deficiency....

The deed of trust contained virtually identical language with respect to plaintiff's remedies.

Hofer executed an "Unconditional Guaranty" in favor of the plaintiff on the same date as the note. The guaranty of Hofer was for the purpose of inducing plaintiff to make the loan. It states with respect to the scope of Hofer's liability as follows:

DAVID L. HOFER, an individual, ... hereby unconditionally, irrevocably and absolutely, jointly and severally, guarantees to the Lender and to every subsequent holder or holders of any promissory note ... evidencing the Loan that (i) the principal of and interest on, and attorney fees provided in, the Note and all other documents or instruments evidencing the Loan will be promptly paid when due in accordance with the provisions thereof....

The guaranty also contained the following language which differentiated Hofer's liability from that of Colcott, the borrower:

This Unconditional Guaranty shall be enforceable despite any exculpation from liability granted to the Borrower.

Colcott subsequently failed to make payments due under the terms of the note and thus went into default. Plaintiff then initiated a public trustee foreclosure and purchased the property at a price which left a deficiency of approximately $67,000.

Thereafter, plaintiff brought its complaint against Colcott to collect the deficiency and sought recovery on the guaranty from Hofer. Defendants responded by filing an answer in which they admitted executing the note and guaranty but denied liability on grounds of fraud and breach of fiduciary duties in connection with the loan transaction.

Before trial, the parties entered into a stipulation of settlement. The stipulation called for payment of $30,000 to satisfy defendants' obligations for the deficiency. In exchange for that payment, plaintiff agreed to release all claims arising out of the July 29, 1986, loan transaction. The stipulation provided for a $10,000 down payment and two installment payments of $15,000 and $5,000 respectively at interest, with the final installment due on a specified date thereafter. It further authorized plaintiff, in the event of defendants' failure to make the scheduled payments, to move the court for entry of judgment equivalent to the full deficiency less any payments made under the stipulation. The case was not to be dismissed until settlement was complete.

Subsequently, full payment was made pursuant to the stipulation. Later, however, defendants filed a motion to have the stipulation set aside contending that they had entered into it under a mutual mistake of fact because the non-recourse provision had been overlooked and that the mistake made it inequitable to enforce the terms of the stipulation. Plaintiff conceded, in the trial court, that, at the time the settlement was reached, it was also unaware of the non-recourse provision in the note, but argued that this did not relate to Hofer's unconditional guaranty and that he remained liable thereunder.

The trial court determined that defendant Hofer was liable pursuant to the guaranty notwithstanding the non-recourse provision in the note. Therefore, any mutual mistake concerning the loan documents relied upon by the parties in making the settlement stipulation related to Colcott's

obligation, but was not material to Hofer's liability. Thus, the trial court refused to set aside the stipulation or to order refund of the payments made thereunder.

Defendants contend that the trial court erred in denying their motion to set aside the stipulation and in not ordering a refund of its payments because the record showed a mutual mistake as a matter of law. They argue that because the primary debtor, Colcott, cannot be held liable for the amount of indebtedness reflected in the deficiency, neither can Hofer, as guarantor, be held liable for this sum. We disagree.

Like any other contract, the language of a guaranty is to be reasonably interpreted according to the intention of the parties as disclosed by facts and circumstances surrounding its execution. *Valley National Bank v. Foreign Car Rental, Inc.*, 157 Colo. 545, 404 P.2d 272 (1965). Further, guarantee agreements are to be strictly construed in favor of the guarantor. *Walter E. Heller & Co. v. Wilkerson*, 627 P.2d 773 (Colo.App.1980).

A guaranty is a collateral promise to answer for the debt or obligation of another. *See* § 4-3-416, C.R.S. The extent of guarantor's liability is determined by the language of the instrument itself, and *absent language to the contrary*, it is usually equal to that of the principal debtor. *Continental National Bank v. Dolan*, 39 Colo.App. 16, 564 P.2d 955 (1977).

Here, the issue arises in applying these rules to the documents at issue and in determining the extent of the debt Hofer undertook to pay.

We agree with the trial court's construction as to the scope of Hofer's liability. In our view, merely because Colcott could not be sued for a deficiency judgment does not mean that it did not incur an indebtedness for which Hofer was liable in the event of default.

By the terms of his guaranty, Hofer became liable for the payment of the note's balance when it became due according to its terms, *i.e.*, when Colcott defaulted in its payments. His undertaking was absolute and unconditional and required no further steps to be taken by plaintiff before it could look to the guarantor for payment.

*See Yama v. Sigman*, 114 Colo. 323, 165 P.2d 191 (1946).

In contrast, once the notes became due, subsequent collection procedures against Colcott, the maker, were restricted to foreclosure against the property only and the maker could not be sued for any deficiency because it was exculpated from any further liability.

Thus, the unconditional nature of Hofer's undertaking, when considered in conjunction with the language of the guaranty regarding exculpation of the borrower, demonstrates clearly that the parties expressly contemplated greater liability on the part of the guarantor in circumstances under which borrower could not be held liable for a deficiency judgment.

Any other construction of the contract would be exalting form over substance and would render the guaranty substantially meaningless and valueless from the standpoint of the entire collateral package bargained for by plaintiff. Furthermore, there is no showing that Hofer did not intend his guaranty to cover the note in question. In fact, the funds reflected by the note were not advanced until after Hofer signed the guaranty, and it was precisely that form of assurance in the proceedings which induced plaintiff to make the loan.

Accordingly, any mistake of the parties in reaching the stipulated settlement related solely to Colcott's liability. It did not relate to plaintiff's claim based upon the separate and independent undertaking of Hofer under the guarantee, and the trial court correctly refused to set aside the stipulation by which that claim was compromised and settled. *See Recreational Development Co. v. American Construction Co.*, 749 P.2d 1002 (Colo.App.1987).

Our resolution of the foregoing makes it unnecessary to consider defendants' other contentions.

Order affirmed.

METZGER and MARQUEZ, JJ., concur.